IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST MERCURY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| ELITE EXTERIORS, LLC, and JOSE FELIPE POMAQUIZA, | ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, First Mercury Insurance Company ("First Mercury"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgement against Defendants, Elite Exteriors, LLC ("Elite Exteriors") and Jose Felipe Pomaquiza ("Pomaquiza"), states as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201. In this action, First Mercury seeks a determination of its rights and obligations under an insurance policy issued to Elite Exteriors in connection with an underlying lawsuit filed by Jose Felipe Pomaquiza, which asserts certain claims against Elite Exteriors.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy is in excess of $75,000.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a), as the Defendants reside in the Northern District of Illinois and the events at issue took place in the Northern District of Illinois.

## PARTIES

4. Plaintiff First Mercury is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business in Southfield, Michigan. At all relevant times, First Mercury was authorized to conduct business in the State of Illinois.

5. Defendant Elite Exteriors is an Illinois limited liability corporation with its principal place of business in Illinois.

6. Upon information and belief, Mikolaj Chlopicki, an individual, is a member and manager of Elite Exteriors and is a citizen and resident of Illinois.

7. Upon information and belief, Kevin Andersen, an individual, is a member and manager of Elite Exteriors and is a citizen and resident of Illinois.

8. Upon information and belief, Defendant Jose Felipe Pomaquiza, an individual, is a resident and citizen of the State of Illinois.

9. The Underlying Action (as defined herein) is pending in the Circuit Court of Cook County, Illinois.

10. First Mercury does not assert any claim against Defendant Pomaquiza in the Complaint and Defendant Pomaquiza has been named as a defendant in this action solely as a necessary and indispensable party.

11. First Mercury issued a policy of insurance to Elite Exteriors, as described more fully below.

12. The scope of the coverage available to Elite Exteriors under the policy is governed by the terms, conditions, and exclusions of the policy.

**THE UNDERLYING ACTION**

13. On September 3, 2019, Jose Felipe Pomaquiza, filed a lawsuit styled *Jose Felipe Pomaquiza v. Elite Exteriors, LLC*, Case No. 2019L009699, in the Circuit Court of Cook County, Illinois ("Underlying Action").

14. The Complaint at Law in the Underlying Action (the "Complaint") asserts separate construction negligence and premises liability causes of action against Elite Exteriors. A true and accurate copy of the Complaint is attached as Exhibit A.

15. Count I of the Complaint alleges that, on or before July 31, 2018, Elite Exteriors was in charge of a construction project at a residential property that it managed which was located at 1520 Westchester Boulevard in the Village of Westchester, Illinois (the "Premises"). Ex. A at p. 1, ¶ 1.

16. The Complaint further alleges that, at the subject time and place, Plaintiff Jose Felipe Pomaquiza (the "Plaintiff") was a construction worker employed by Arizaga Construction, Inc. ("Arizaga") who was on the Premises in the furtherance of the construction project. Ex. A at p. 1, ¶ 2.

17. The Complaint further alleges that, at all times relevant, Elite Exteriors owed a duty to Plaintiff to provide him with a safe place to work, safe working conditions, and safe and proper fall protection. Ex. A at p. 1, ¶ 3.

18. The Complaint further alleges that Elite Exteriors (through its agents, servants and employees), was present during the course of erection and construction work at the Premises and participated in coordinating the work being done, designated various work methods,

3

maintained and checked progress and participated in the scheduling and inspection of the work. Ex. A at p. 1-2, ¶ 4.

19. The Complaint further alleges that Elite Exteriors had the authority to stop or refuse the work and materials, and order changes in the work if being performed in a dangerous manner or for any other reason. Ex. A at p. 2, ¶ 4.

20. The Complaint alleges that, at the subject time and place, the Plaintiff was in the exercise of due care and caution for his own safety. Ex. A at p. 2, ¶ 5.

21. The Complaint further alleges that, at the subject time and place and prior thereto, Elite Exteriors was negligent in one or more of the following ways because it failed:

    a) to reasonably inspect, supervise and control the work site and the work being done thereon, when the defendant new or in the exercise of ordinary care should have known, that proper inspection and control was necessary to prevent injury to the Plaintiff;

    b) to properly supervise roofing construction work being performed by Arizaga Construction employees, including the Plaintiff;

    c) to enforce safety procedures in a proper manner, including fall protection procedures for the work being performed;

    d) to know and enforce their own safety rules, OSHA, and safe customs and practices;

    e) to safely and properly coordinate and schedule the work ongoing at the jobsite, including all work taking place on the roof at the subject construction site;

    f) to provide safe, suitable and proper fall protection in the form of personal fall arrest systems, lanyards, and/or retractable lifelines for construction workers, including Plaintiff, to utilize as a means and method of fall protection while performing roofing work while being exposed to falls of a significant height;

    g) to provide safe, suitable and proper anchorage points for fall protection during Plaintiff's performance of roofing work at the subject construction site; and

    h) to provide a guardrail system and/or perimeter protection for Plaintiff and his co-workers that would prevent those construction workers from being exposed to falls of a significant height.

Ex. A at p. 2-3, ¶ 6.

22. The Complaint further alleges that the duties and responsibilities of the Plaintiff required him to work at roof level, and that he was required to do so to install roofing material at Elite Exteriors' instruction, direction and under their supervision. Additionally, the Complaint alleges that, while attempting to install roofing material, Plaintiff was caused to fall from the roof of the Premises to the ground, which caused him to sustain severe and permanent injuries that have resulted in significant medical bills, pain, suffering, loss of normal life, disability and loss of income. Ex. A at p. 3, ¶ 7-8.

23. Count II of the Complaint alleges that, on and before July 31, 2018, Elite Exteriors owned and managed the Premises and had a duty to exercise reasonable care in the possession, operation, management and maintenance of the Premises. Ex. A at p. 3, ¶ 7-8.

24. The Complaint further alleges that, at the subject time, Elite Exteriors carelessly and negligently caused and permitted the Premises to become and remain in a dangerous condition for persons using the Premises, despite knowing of said dangerous condition. Ex. A at p. 5, ¶ 8.

25. The Complaint further alleges Plaintiff was a construction worker performing work at the Premises and, at all times, was exercising due care and caution for his own safety. Ex. A at p. 5, ¶ 9.

26. The Complaint further alleges that, at the subject time, Elite Exteriors was guilty of one or more of the following careless and negligent acts and/or omissions:

    a) improperly operating, managing, maintaining, and controlling the Premises, so that as a direct and proximate result thereof, the Plaintiff was injured;

    b) failing to reasonably inspect, supervise and control the work site and the work being done thereon, when [Elite Exteriors] knew or in the exercise of ordinary care should have known, that proper inspection and control was necessary to prevent injury to the Plaintiff;

5

  c) failing to properly supervise roofing construction work being performed by Arizaga Construction employees, including the Plaintiff;

  d) failing to enforce safety procedures in a proper manner, including fall protection procedures for the work being performed;

  e) failing to know and enforce their own safety rules, OSHA, and safe custom and practice;

  f) failing to safely and properly coordinate and schedule the work ongoing at the jobsite, including all work taking place on the roof at the [Premises];

  g) failing to provide safe, suitable and proper fall protection in the form of personal fall arrest systems, lanyards, and/or retractable lifelines for construction workers, including Plaintiff, to utilize as a means and method of fall protection while performing roofing work at roof level, while being exposed to falls of a significant height;

  h) failing to provide safe, suitable and proper anchorage points for fall protection to be affixed during Plaintiff's performance of roofing work at the subject construction site; and

  i) failing to provide a guardrail system and/or perimeter protection for Plaintiff and his co-workers that would prevent those construction workers from being exposed to falls of a significant height.

Ex. A at p. 5-6, ¶ 10.

  27. The Complaint further alleges that Plaintiff's duties and responsibilities on July 31, 2018 required that he work at the roof level of the Premises, and that he was required to do so to install roofing material at Elite Exteriors' instruction, direction and under their supervision. Ex. A at p. 6, ¶ 11.

  28. The Complaint further alleges that while attempting to install roofing material, Plaintiff was caused to fall from the roof of the Premises to the ground, which caused Plaintiff to sustain severe and permanent injuries, which have resulted in significant medical bills, pain, suffering, loss of normal life, disability and loss of income. Ex. A at p. 6-7, ¶ 12-13.

29. The Complaint demands judgment against Elite Exteriors in excess of $50,000, plus the costs in the Underlying Action. Ex. A at p. 7.

## THE POLICY

30. First Mercury issued Policy Number TX-CGL-0000077843 to Named Insured Elite Exteriors, LLC which provided Commercial General Liability coverage with limits of liability of $1,000,000 Each Occurrence and a $2,000,000 General Aggregate, with effective dates of April 15, 2018 to April 15, 2019 (the "Policy"). A true and accurate certified copy of the Policy is attached as Exhibit B.

31. Coverage A of the Commercial General Liability Coverage Part of the Policy provides, in pertinent part, as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILTY**
>
> **1. Insuring Agreement**
>
> **a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> ***
>
> **b**. This insurance applies to "bodily injury" and "property damage" only if:

7

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period;

***

Ex. B at p. 6.

    32.    The Policy contains an endorsement entitled "Exclusion – Bodily Injury to Independent Contractors, Subcontractors and their Employees With Conditional Exceptions (form FMIC-GL-2231(06/2016)), which provides, in pertinent part, as follows:

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following is added:

It is agreed this insurance does not apply to "bodily injury" to:

    1.    Any independent contractor or subcontractor performing work directly or indirectly on behalf of any Insured;

    2.    Any "employee" of such independent contractor or subcontractor; or

    3.    The spouse, child, parent, brother, sister or registered domestic partner of such independent contractor, subcontractor or "employee" as a consequence or 1. or 2. above.

Solely for the purpose of this endorsement, the term "employee" includes a leased employee, temporary employee, borrowed servant, casual laborer, independent contractor, subcontractor or any other person working for any independent contractor or subcontractor, performing work directly or indirectly on behalf of any insured.

However, this exclusion shall not apply in those cases or situations where the independent contractor or subcontractor has met all of the following conditions:

    1.    The independent contractor or subcontractor has Commercial General Liability coverage in place at the time of the loss with minimum limits of

    $  1,000,000    per occurrence
    $  2,000,000    general aggregate, and
    $  2,000,000    products completed operations aggregate.

    2. The Insured is named as an additional insured on the independent contractor's or subcontractor's Commercial General Liability Policy.

    3. The independent contractor or subcontractor has in place at the time of the loss, an indemnity agreement whereby the independent contractor or subcontractor agrees to indemnify, defend, and hold harmless the Insured.

    4. The independent contractor or subcontractor waives any right of subrogation against the Insured.

Commercial General Liability coverage maintained by independent contractors or subcontractors shall be primary and non-contributory and this Policy shall be excess of the Limits of Liability of such insurance.

* * *

Ex. B at p. 49.

    33.    Section V- Definitions of the Commercial General Liability Coverage Part of the Policy contains the following relevant definitions:

* * *

    4.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

    5.    "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

* * *

    13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

    18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

        a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which damages are claimed and to which the insured submits with our consent.

  19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

* * *

Ex. B at p. 18-20.

<b><u>THE DISPUTE</u></b>

  34. Elite Exteriors has sought a defense and indemnity from First Mercury under the Policy in connection for the claims asserted against it in the Complaint filed in the Underlying Action.

  35. First Mercury has determined through its coverage investigation that it owes no to defend or indemnify Elite Exteriors in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

  36. First Mercury has advised Elite Exteriors in writing that it disclaims any obligation under the Policy to provide a defense or indemnify Elite Exteriors in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

  37. First Mercury now brings this action to obtain a judicial determination that it owes no duties under the Policy to defend or indemnify Elite Exteriors in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

<b><u>COUNT I – DECLARATORY JUDGMENT</u></b><br><b><u>(Against Defendant Elite Exteriors)</u></b>

  38. First Mercury incorporates the allegations contained in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

  39. Pursuant to the Exclusion – Bodily Injury to Independent Contractors, Subcontractors and their Employees With Conditional Exceptions endorsement, SECTION I –

COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions of the Policy was amended to provide that "this insurance does not apply to 'bodily injury' to: 1. [a]ny independent contractor or subcontractor performing work directly or indirectly on behalf of any Insured; 2. [a]ny 'employee' of such independent contractor or subcontractor; or 3. [t]he spouse, child, parent, brother, sister or registered domestic partner of such independent contractor, subcontractor or 'employee' as a consequence or 1. or 2. above." Ex. B at p. 49.

40. The Exclusion – Bodily Injury to Independent Contractors, Subcontractors and their Employees With Conditional Exceptions endorsement further provides that"[s]olely for the purpose of this endorsement, the term 'employee' includes a leased employee, temporary employee, borrowed servant, casual laborer, independent contractor, subcontractor or any other person working for any independent contractor or subcontractor, performing work directly or indirectly on behalf of any insured." Ex. B at p. 49.

41. The Exclusion – Bodily Injury to Independent Contractors, Subcontractors and their Employees With Conditional Exceptions endorsement further provides that "this exclusion shall not apply in those cases or situations where the independent contractor or subcontractor has met all of the following conditions:

1. The independent contractor or subcontractor has Commercial General Liability coverage in place at the time of the loss with minimum limits of

    $ 1,000,000 per occurrence
    $ 2,000,000 general aggregate, and
    $ 2,000,000 products completed operations aggregate.

2. The Insured is named as an additional insured on the independent contractor's or subcontractor's Commercial General Liability Policy.

3. The independent contractor or subcontractor has in place at the time of the loss, an indemnity agreement whereby the independent contractor or subcontractor agrees to indemnify, defend, and hold harmless the Insured.

11

   4. The independent contractor or subcontractor waives any right of subrogation against the Insured."

Ex. B at p. 49.

  42. The Complaint alleges that Plaintiff was a construction worker employed by Arizaga Construction, Inc. at the time he fell off the roof of the Premises on July 31, 2018. Ex. A at p. 1, ¶ 2.

  43. First Mercury has determined through its investigation that Elite Exteriors entered into a Subcontract Agreement dated July 25, 2018 with N Castro Inc. with respect to the work to be performed at 1520 Westchester Boulevard in Westchester, Illinois and that N Castro Inc. is identified in the Subcontract as the "Subcontractor."

  44. First Mercury's investigation has further determined that N Castro Inc. did not waive any right of subrogation that it may have against Elite Exteriors in connection with Plaintiff's injuries in the Subcontract.

  45. First Mercury's investigation has further determined that the Subcontract does not require Elite Exteriors be named as an additional insured under Commercial General Liability coverage that N Castro Inc. had in place at the time of Plaintiff's injury on July 21, 2018.

  46. Upon information and belief, Arizaga Construction, Inc. and N Castro Inc. are the same entity.

  47. The Policy does not afford coverage for the claims asserted against Elite Exteriors in the Underlying Action because the Complaint seeks to impose liability against Elite Exteriors for "bodily injury" to an employee of a subcontractor of Elite Exteriors sustained while the employee was performing work directly or indirectly on behalf of Elite Exteriors, which is precluded from coverage by operation of the Exclusion – Bodily Injury to Independent Contractors, Subcontractors and their Employees With Conditional Exceptions endorsement of the

Policy, and the terms of the Subcontract does not meet all of the conditions required for the exception to the Exclusion – Bodily Injury to Independent Contractors, Subcontractors and their Employees With Conditional Exceptions endorsement to apply.

48.    Accordingly, First Mercury owes no duty under the Policy to defend or indemnify Elite Exteriors with respect to the claims asserted against it in the Underlying Action.

WHEREFORE, First Mercury seeks a judgment that it owes no duty under the Policy to defend or indemnify Elite Exteriors in connection with the claims asserted in the Complaint filed in the Underlying Action.

## **PRAYER FOR RELIEF**

Plaintiff First Mercury Insurance Company hereby respectfully requests the entry of an order and judgment in its favor and against Defendants Elite Exteriors, LLC and Jose Felipe Pomaquiza declaring as follows:

a. This court has jurisdiction over the parties and the subject matter of this litigation;

b. The Policy does not provide coverage to Defendant Elite Exteriors for the claims asserted against it in the Complaint filed in the Underlying action;

c. First Mercury Insurance Company does not owe a duty under the Policy to defend Elite Exteriors or reimburse defense costs incurred by Defendant Elite Exterior in connection with the claims asserted against it in the Complaint filed in the Underlying Action;

d. First Mercury Insurance Company does not owe a duty under the Policy to indemnify Elite Exteriors in connection with the claims asserted against it in the Complaint filed in the Underlying Action;

e. First Mercury Insurance Company is entitled to an award of its costs; and

f. For such other and further relief as the Court deems proper.

Respectfully Submitted,

FIRST MERCURY INSURANCE COMPANY

Dated: March 20, 2020

By: /s/ James J. Hickey
James J. Hickey (Illinois Bar No. 6198334)
Sean M. Phillips (Illinois Bar No. 6317897)
KENNEDYS CMK LLP
100 North Riverside Plaza, Suite 2100
Chicago, Illinois 60606
Phone: (312) 800-5000
Fax: (312) 207-2110
James.Hickey@kennedyslaw.com
Sean.Phillips@kennedyslaw.com